When you're ready, Ms. McEachin. Good morning, may it please the court, your honors, I'm Molly McEachin, I'm here on behalf of the appellants in this matter who are Richard Stalder, et al. of the Louisiana Department of Corrections. And as you all know, this is a case and an issue derived out of a 1983 action that was  My clients, the Department of Corrections, we've cited three issues on appeal, but today I would like for us to focus on the denial of qualified immunity. The district court judge in March of 2015 denied our request for the defense of qualified immunity, and this is what I'd like to discuss today, the basis for that and the error involved. And I'd like to point out that in briefing this matter, plaintiff's counsel has pointed out the jurisdictional issue, and I'd like to confront that. There was a report and recommendation that was issued prior to the judgment coming out, as always, and no, there was not an objection made, there was an objection made by plaintiff's counsel and plaintiff on the basis of several of the issues, there were multiple issues decided on summary judgment, however, the end result was awash and in our favor, therefore, there was no filing of an objection, however, we did appeal on several issues, one of which was qualified immunity, which brings us here today. And I'd like to point out that an immediate appeal from the denial of summary judgment on qualified immunity is available when there's a purely legal issue, in this case, there's a purely legal issue, and that legal issue would be whether the law was clearly established at the time of the alleged civil rights violation, and it is our contention in this case, and to give you the . . . So, threshold questions, you accept that our standard review is plain error? Yes, sir. Okay, and is it also fairly describing your position that the only issue before us is now qualified immunity? Basically, yes. I would concede that we have appealed on the issue of extinguishment of the obligation, and I don't find that properly before the court today. Okay, so it's that issue, and you've described the question. Yes, sir. And why wouldn't the Cox v. Whitley case establish the law that made it unlawful to deny him the double credit? Well, since you've asked that question, I will go directly to that. I was getting to that. There is a . . . there is actually an unpublished opinion of this court that says it's not. In Nelson v. Stalder, which was decided in 2002, and I understand its precedent is . . . doesn't exist. It's limited. However, it's the exact fact scenario is the case that we have before us, and in that situation, we actually have a common defendant, which was Mr. Stalder, who was the head of the DOC at the time, who's no longer, but is still a defendant in my case. And the issue arose at that time that the plaintiff was over-incarcerated. However, this court in 2002 decided that until the state court, the state appellate court said so and interpreted the law for them, that they had no . . . that law was not clearly established and they had no reason to know that their actions were in violation. And federal law requires . . . the prong of clearly established law at the time requires just that at the time, at the time of the alleged violation. And when this took place, in our scenario, in our fact scenario, in the case of Mr. Owens, the plaintiff here, the interpretation of Cox v. Whitley or any other statute that determined good time eligibility for Mr. Owens was misinterpreted. And they had no reason to know they were misinterpreting it, misinterpreting that until they got to the First Circuit. And the First Circuit said, whoa, wait a minute, you did this wrong. He is entitled to those days, and he's entitled to those days all the way back to 1989. And three days after the First Circuit renders that opinion, the Department of Corrections grants Mr. Owens the relief salt, which was to release him. And before that, they were not . . . it was not clear . . . it was . . . per what is required under qualified immunity, that law was not clearly established until the First Circuit said it was. And I can further back this up. On the Cox v. Whitley point, there is a Supreme Court case, Plumhoff v. Ricard, which is 134, Supreme Court, 2012-2014, is actually the year of the decision, and the fact scenario is not the same. The civil rights violation was actually that of excessive use of force. In this case. And there was state law controlling, in the Plumhoff case, there's state law that says what excessive use of force is. However, the defendants argued, we did not use . . . we did not understand that to be the interpretation of excessive use of force. We did not use excessive use of force. That's not clearly established, and that's how they got to the Supreme Court, was on the constitutional issue of that clearly established law. And what the court said in Plumhoff was, at the state level, this should be decided on a case-by-case basis. However, until now, the Supreme Court, who sets the precedent for what's clearly established, has not decided this issue. You're right. At the time you acted, that threshold for excessive force was not clearly established. And I'm comparing the facts of that to the facts in the case at Bar, which is, yes, Cox v. Whitley existed at the time that the DOC acted. However, Cox v. Whitley was not precedent for the purposes of clearly established when you're looking at a constitutional issue and a due process violation. Not to mention, I'd like to add, the process was received by the plaintiff because he was afforded administrative remedies all the way up to the First Circuit and received the relief he sought. And there was no . . . there was really no way for the DOC, even if they were confused, there was really no way for them to know that what they were doing was not a correct interpretation of how to decipher that time computation until the First Circuit said, no, the 19th JDC got it wrong. You miscalculated. Go back . . . What was the theory? What does the record reflect the theory was as to how you could interpret Cox not to apply? Where do we find that in the record, the theory that . . . It's . . . per the First Circuit's decision, what the 19th JDC . . . and I don't have record of this commissioner. There's a commissioner that does time computation for the state. And to my knowledge, that's never been offered into the federal court record. However . . . Is there anywhere in here where there's a coherent theory explaining why it would be objectively reasonable to say Cox doesn't apply? Yes. The record shows . . . the record will show, the record does show that there were forms and I assume you guys are . . . you may not be familiar with, but through this case, I've learned there are forms that the DOC uses that they have an inmate sign saying when they're eligible, that they want to opt for this good time credit, whether it be double or whatever diminution of sentence. And there are forms that are filed into the record that will show when this particular inmate, Mr. Owens, signed his. And according to the record, he did not sign one until 1997. It did not become an issue until 1997 whether or not he wanted the time, asked for the time, was going to accept any good time credit, and I think there was a misinterpretation of the statute versus the case at the time within the DOC. And I'm going to be honest with you, their contention is that we only . . . we assumed him eligible from the date he signed that form. Cox v. Whitley says, no, you can't sign your way out of that right. It predates to your sentence. I'm going to be honest, I can't tell you that . . . which employee versus another employee of the DOC misunderstood Cox versus the statute that says what the effective date is. But that, in and of itself, is why we're here on the issue of qualified immunity. Qualified immunity itself is a protection for a government official to make a mistake. If they're not allowed to make a mistake, you're holding them to a standard that just does not exist. Qualified immunity shields them from this exact situation. It's why they went through the administrative procedure. It's why they went to the 19th JDC. It's why they went to the First Circuit, so they could find out what they were and were not supposed to do in competing in this guy's time. And if we don't allow them qualified immunity, their rights are substantially affected because it puts a fear in every one of those employees and every subsequent employee of doing their job. And essentially, I mean, that is the basis for qualified immunity. If we don't allow it to be used, what do we have it? And these guys are . . . they're prison employees. They're not us. They don't understand, you know, Cox v. Whitley versus anything else until somebody sits down and does what we're doing to explain it to them. And furthermore, we're at a point in this case where the relief that was asked for was immediately granted. In fact, I think the record shows that Mr. Owens was released three days after the First Circuit. And at this stage, what we're asking for is, obviously, we want a reversal on the denial of the qualified immunity because we were not afforded what should have been afforded to us. And that qualified immunity is set up just for a situation like this where a mistake is made, and we get to go through the court system and find out how we made the mistake and where to fix it, and thereby set this precedent so that this doesn't happen again. And I hope I've answered your question about Cox v. Whitley. At this point . . . What would be the clear, obvious error in finding that a single and intermediate appellate decision, which the Supreme Court denied cert reviewing, would be sufficient to establish law clearly? Ask me that one more time. If our review is for plain error only, do you have authority that would say when there's just one intermediate appellate court out there that's pronounced what the law is, that that's still not sufficiently clear? Well, I think Plumhoff gives you that. I think that a state court's interpretation on a case-by-case basis does not set the proper precedent for what the federal courts and the Supreme Courts require of clearly established. Clearly established should be . . . clearly established, according to multiple Supreme Court and even Fifth Circuit cases, should be such that it's been decided at a Supreme Court. And Plumhoff states that that's the law that's pulled out of Plumhoff. And that's why I use it, because there was a state court decision which was an intermediate decision, such as what we have in Cox v. Whitley or Owens at the First Circuit. Those are case-by-case, but this is a constitutional issue, and to a violated constitutional right, that right has to be clearly established, and that can't happen until you've gone up through the federal appellate system, and that's what our basis for this is today. This right was not . . . yes, he had a right, and we're not even saying that he wasn't entitled to those days. What we're saying is that there was a misinterpretation of how to calculate them, and we were not aware of that until the First Circuit said we were. All right. Counsel, just as a housekeeping matter, you might want to refrain from referring to us as you guys. You should just say the court and not be quite so . . . My apologies. You know, just a forewarning. Some panels might be a bit more strident than this panel about it, so I just . . . This is my first time. I understand, and I know some of it's more the . . . this panel's probably maybe as laid back as you might get, but let's just say there's some other panels that somebody might come leaping over the trance, so just a word to the . . . Yes, sir. It doesn't detract from the merits of your argument, just a word to the wise, that's all. Thank you very much. All right. You did good. You've got time for rebuttal. All right, Mr. Cameron. Good morning, Your Honors, Judge Higginson, Stewart, King, Nelson Cameron, on behalf of Apple Lee, Kenneth Owens. This case rests on several very simple principles of law and facts. Number one, there was a contract between the state of Louisiana and Kenneth Owens to award him good time. And the principle of law that was applicable to that contract was that the good time would be awarded retroactive back to the date of sentencing on January the 4th, 1989. However, the state of Louisiana, its record analysts, Slay, Elkins, Gowans, and even the department secretary knew that that good time should be retroactively applied, but failed to do it, failed to make it retroactive, and that was a case that was enunciated in . . . that the application of retroactivity was enunciated on December 23rd, 1992, in Cox v. Whitley, which was about 10, 11 years before this. And also, the DOC regulations about this issue clearly had Cox v. Whitley in the regulations. However, it didn't have the retroactivity aspect in the regulations. And that regulation can be found at Record on Appeal 1275. Gowans, who was one of the head record analysts, said he trained the various record analysts in Cox v. Whitley and that there was retroactivity. He testified in his deposition, the main point of Cox v. Whitley was retroactivity, was to make it retroactive back to the date of sentencing, not to the date that the contract was signed. And there's a . . . I want to talk just a little bit about jurisdiction. As your honors know, that the magistrate in his report and recommendation denied qualified immunity to these defendants, and that part of his opinion was not appealed, and thus the court is left with a plain error review of that decision. And I'd like to read just quickly one of the things that the judge said about qualified immunity. He stated, despite being ordered to correct their method of calculation at a good time, but in Louisiana First Circuit Court of Appeal, in Cox v. Whitley, defendants do not appear to have done so, as noted by the Court of Appeal in the Owens case, resulting in the same errors made in calculating Owens' good time, as were made in Cox's case. Moreover, Owens' master prison record was not corrected to reflect his good time until he was reincarcerated. And Judge Trimble, in affirming the magistrate, indicated that he rejected any argument based on ignorance of the law, particularly since this matter was diligently and repeatedly presented to the defendants by Kenneth Owens through the Corrections Administrative Remedy Procedure. And that was about a two- or three-year process that Mr. Owens had to go through in order for the defendants to finally recognize that good time was to be retroactively applied. And as your Honors know, in Wolf v. McDonald, good time, once awarded by the state, is a recognized liberty interest. And then that retroactivity, it's not a discretionary thing, that's a mandatory thing. So that would be a recognized liberty interest protected by the Due Process Clause. So there should be no qualified immunity for these defendants. As you may have read in the brief, Mr. Owens met with the local supervisor over at Record Panelist, Rodney Slade, at Winn Correctional Center in October of 2003. And he actually had that case in hand, the Cox v. Whitley case, told Slade about that. And Slade basically said, you know, your good time credits are being applied correctly. This case, you don't have any legal standing to get any more good time. And don't file an ARP. We don't want to discourage you from filing an ARP on this matter. Then Mr. Owens, he does file his ARP in February of 2004. First step response by Linda Ramsey denies the ARP. She's also a named defendant. And I think that was by August of 2004. And that's when Mr. Owens finally, he had to file a petition in the 19th Judicial District Court, East Baton Rouge Parish, which finally went up to the First Circuit. As you may know, the First Circuit Court of Appeal is that court of appeal that sits over all appeals of ARPs. That's its functioning. So it gets cases from all over the state of Louisiana and deals only with ARPs. So that's one of the importance of a First Circuit decision, a Louisiana First Circuit Court of Appeal decision. As you may have seen in Cox v. Whitley, the state attempted to get a writ of review from the Louisiana Supreme Court. And that writ of review was, in fact, denied about a month after the original decision. Stalder, he was the Secretary of the Department of Corrections. He did not actually conduct any computations. We have provided authority from Whirlby Kern, a decision of this court, where a sheriff was made individually liable in a case where a man was kept nine months past his release date when there was an order for that release date. The court determined that he had constructive notice, because over a nine-month period of time, he was due to be released. So even though the sheriff in that case was not personally involved in handling any of the paperwork and things such as that, he was deemed to be held liable in that case because of constructive notice. The court in the Whirlby Kern analogized to property transactions and financial instrument transactions, saying we have constructive notice in those types of cases, why shouldn't we have one where a man's liberty interest is at stake? Mr. Owens was, in fact, entitled to good time. His record showed that he was entitled to good time. He was being awarded good time. He signed the contract. And that's the thing that the Cox v. Whitley, and I believe the Owens case focused on, is that the eligibility for good time is the signing of the contract for the good time. And that's under Louisiana Revised Statutes Title 15571.14. He is entitled to that good time once he signs that contract. And I'm talking about double good time. That would be 30 days good time for every 30 days served. He had originally a 30-year sentence, so he was entitled to have 15 years of good time. Just for the record, some of the arguments made by the defendants below are that, well, he was found, he pled guilty to attempted manslaughter, and he pled guilty to manslaughter. These are crimes of violence. Well, Section 571.1 has a reference in it that certain crimes of violence, you're not entitled to good time. But 571.14 says, notwithstanding all these other statutes in this part, if you're eligible for good time if you're sentenced after July 1, 1982, that's what Cox v. Whitley says, and you sign the good time form, you sign that, you're eligible. That's notwithstanding 571.1.3. And in Cox v. Whitley, the man was found guilty of manslaughter, but yet because he signed the form and he was sentenced after July 1, 1982, he was entitled to double good time under the statutory scheme of the state of Louisiana. So the eligibility was there for good time, and there shouldn't have been any mistake about that. All of the record analysts involved, Slate, Ramsey, Gowans, they all knew about Cox v. Whitley. Slate testified at, I think at Oro, it's at the Record and Appeal, 1672, I believe that's the page number, where he testified that he knew about Cox v. Whitley. He knew it was to be retroactively applied. So if he knew all these things, and he was even confronted with that by Owens personally, how could he possibly not be deliberately indifferent to the clearly established right to be released? And that is what we have at issue here since 1977, for O.B. Kern has established the right to be timely released from prison or from jail. There's nothing in the record showing their theory as to why Cox wouldn't apply here? No, there's no reason why it wouldn't. Is that what you're asking? Yeah. Yeah. There's no reason why Cox v. Whitley wouldn't apply. The First Circuit, Louisiana First Circuit said, and Owens installed it, it applied. As a matter of fact, the quote is, from Owens, is that this is exactly the same thing we had in Cox. That's not the quote, but I mean, it's basically. Yes, she offered Plumhoff and mentioned Nelson v. Stalder. Do you want to touch on those cases? I'm sorry, I'm not hearing you very well. She suggested that Plumhoff would throw doubt into whether an intermediate appellate court with a single published decision could establish law clearly for purposes of qualified immunity. Well, it is a published decision, and it is a final decision. Whether it's an intermediate court or not, I wouldn't think that that would matter. It had jurisdiction over the matter, so I would assume it would be an appropriate interpretation of the statute. As I said, the First Circuit Court of Appeal in Louisiana is the one that reviews all these carts on these types of issues. The right to be timely released has been clearly established. As I said, Roe v. Kern, 1977, and this court has reviewed multiple diverse ways in which the right to be released has come up. A court order release has come up where a man in Mississippi—the facts are escaping me right now, but it was a fairly complex issue. Ultimately, this court denied—granted qualified immunity to Porter v. Epps, as the name of the case I'm thinking of, and Epps was a fairly high-ranking individual, something similar to Stalder, but they did not—they granted him qualified immunity. He was the only one that had. They actually went through a jury trial in that case, and it was fairly complex, but they still recognized that the right was there. It's just that they didn't have the right person. If they had gone further down the chain of command and gotten the people who were really responsible for effecting the denial of timely release, I do believe they would have had their case lined up because they went so high up the chain of command. They said he wasn't personally involved enough. Does the qualified immunity order here cover Stalder? I'd say no, because this case, Cox v. Whitley, has been in the books so long, and although the record analyst knew about it, if you look at the policy here, it mentions Cox v. Whitley, but it doesn't mention retroactivity. He is responsible for that. Using that constructive notice, I would think that he would not be entitled to qualified immunity. This is actually the third motion for summary judgment that's been filed by the state for Stalder. There was one filed in 2008. There was another one filed in 2012, and they were both denied. Basically, using these same issues are being used in this motion that was filed this past time in 2014. The one that was filed in 2014 was filed after the scheduling order had expired for motions, and there was a trial date set. We were going to go to trial, but the motions were filed, and Judge Trimble, I think he permitted their filing, and it upset the trial date. This is the third time this has happened with Stalder. In all those other times, there's been other pieces of evidence brought in to show that he had responsibility for the policies and was aware of Cox v. Whitley. In effect, also, when Owens filed his petition in the 19th Judicial District Court, Stalder was named in that petition. The answer, which is at tab 11 in your record of excerpts, has Stalder. He's the person coming in and answering. That answer was filed—I'm sorry, it's tab 7. It was filed October 21, 2004. That's still three years, about three years down the road from when Mr. Owens was finally released. During that entire time, Stalder has to know, the question here is Cox v. Whitley retroactively applied to the date of sentencing, or is it not? Clearly, it was. His subsequent conviction on a new offense and credit given has no impact? Okay. Wasn't Owens convicted again, and then the state applied the credit? Yes. He got arrested for possession of marijuana, a small amount of marijuana, and he was put back into the system, and he was revoked on his probation because of that. That's right. But did they then credit the time that's in question? Well, that's a good question. In 2015, he was paroled. They say—the state says, even though we don't have to do this, and you'll see that in the filings of John Ellis, previous attorney for the state, filed the motion for summary judgment in June 2014. He says, well, we didn't really have to do this, but we're going to go ahead and let him out, give him 1,256 days. First thing I'll say is I don't believe the court has jurisdiction over that grand summary judgment, but for the sake of argument, we would say that A, there was no agreement between Owens and the state that his being released would release the state from its obligation to pay compensatory damages for his not being released for 1,256 days. Louisiana civil law is pretty clear. You have to have—if you're going to have an ovation of an obligation or an extinguishment of an obligation, you have to have a written agreement. There was no written agreement, but he was released. But as Judge Trimble said in his opinion that when he addressed that issue, he says the award of the 1,256 days, quote, does not change the fact he was falsely imprisoned in the past. The violation has already occurred, and thus any damages sustained by the plaintiff have already been sustained. My argument is you can't turn the hands of the clock of time back. You can't recapture what has been lost in time. So those arguments, I don't believe would be credible or would make a difference in the outcome of the case. Any questions? I believe we have your argument, Mr. Cameron. Thank you. All right. Thank you, sir. Rebuttal, if you so desire. Thank you. May it please the Court, Your Honors, I just have a brief rebuttal. I'd like to point out that Plaintiff's Counsel addressed the fact that Plaintiff Mr. Owens does have a liberty interest in his good time credits, and that's established by statute as well as precedent of the state, and I concede that. However, I would like to point out that once parole is revoked upon a violation of that parole, such as was the case with Mr. Owens in April of 2013, you no longer have a right to that good time credit. You no longer have a right to diminution of sentence, and that was the situation that took place in this case. And I understand that Plaintiff's Counsel has also pointed out that he feels like you can't go back and undo this issue of the credit, and we're not arguing that. I'm not going to sit here and argue that he's not entitled to any credit. However, I would like to point out in correction of Plaintiff's argument that Mr. Owens was reincarcerated in 2013 to complete an 11-year sentence that was a portion of his original sentence, and because the state said we're going to give you this 1,256 days again, he's already been released. He was released in February of 2014. So at this point, he has received it regardless of whether it can be undone. He can't say that he didn't receive it. But I would like to reiterate my argument previously made in response to a question previously posed by Judge Higginson regarding plain error. As you all know, plain error must be clear and obvious for you guys. I'm sorry, for your honors, for this court to grant any relief, and the error must have affected appellant's substantial rights, affecting the outcome of the case. These errors should be addressed and remedied where the error severely upsets fairness and integrity. The citation for that would be Puckett v. United States and also N. Ray Isbell Records, Inc., which can be found at 774-F3D-859. That's a Fifth Circuit 2014 case. And I'm here to ask for this based on and ask that you recognize the plain error based on the fact that qualified immunity does substantially affect the rights of an official who is trying to do a job such as in this situation where you have a panel or an office of officials who even, as plaintiff's counsel pointed out, are working together on time computation. You have, you know, one official who does some portion of it, one official who does another portion of it. We've briefed in our original brief how much involvement each has. Admittedly, Mr. Stalter had limited involvement, and the other defendants, Mr. Goins, as well as the current time computation manager, have all said how complicated this process is and have all said that they believe they were interpreting this in the manner they thought to be in accordance with the law. And I'm here today on behalf of the DOC to submit that qualified immunity is something that should be recognized where appropriate, and we stand with the contention that this right was not clearly established. And I would hold steadfast that what should be controlling in this situation, regardless of Cox v. Whitley, I cannot. I realize we're stopped from what took place at the state court. We concede that. But at this point, you've got a recent decision which came out of the same Department of Corrections, the Fifth Circuit opinion of Nelson v. Stalter that was rendered in 2002, which stood ten years after, at least ten years after Cox v. Whitley and still made it to this court. And it is the exact same fact scenario, and this court happened to decide in that case that the law was not clearly established until the state court interpreted it for the DOC. And that's what we're asking for at this juncture. All right, thank you. I think we have the arguments for both sides. Case will be submitted, along with the other cases that were argued this morning.